**Dennis Waldon STOCKTON, Petitioner–Appellee,**

v.

**Ronald J. ANGELONE, Director, Virginia Department of Corrections, Respondent–Appellant.**

**No. 95–4011.**

United States Court of Appeals, Fourth Circuit.

Submitted Sept. 26, 1995.

Decided Sept. 26, 1995.

Donald R. Curry, Senior Assistant Attorney General, John H. McLees, Jr., Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellant.

Anthony F. King, Howrey & Simon, Washington, DC; Steven D. Rosenfield, Charlottesville, Virginia, for Appellee.

Before ERVIN, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.

## OPINION

PER CURIAM:

The Commonwealth of Virginia seeks to vacate a stay of execution granted by the district court in petitioner's case. Such stay was granted by the district court for the purpose of holding a future evidentiary hearing on petitioner's claim of actual innocence in the capital murder of one Kenneth Arnder. For the reasons set forth herein, we vacate the stay of execution and direct that our mandate issue forthwith.

This petition comes to us very late in the day. It has now been twelve years since Stockton was convicted by a jury of the capital murder of eighteen-year-old Kenneth Arnder. In the ensuing dozen years, Stockton's case has made its way through numerous reviewing courts. His direct appeals aside, Stockton has filed no fewer than six state habeas petitions and three federal habeas petitions. The claims he raises are procedurally defaulted, and they also represent an abuse of the writ. This court has not hesitated to vacate last minute stays of executions granted by district courts ruling on procedurally defaulted claims in successive petitions. *Peterson v. Murray,* 949 F.2d 704 (4th Cir. 1991); *Evans v. Muncy,* 916 F.2d 163 (4th Cir. 1990), *cert. denied,* 498 U.S. 927, 111 S.Ct. 309, 112 L.Ed.2d 295 (1990); *Clanton v. Bair,* 826 F.2d 1354 (4th Cir. 1987), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988).

The Supreme Court has made clear that a petitioner raising an eleventh-hour actual innocence defense faces a significant burden. Here, as in *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), we face a freestanding claim of innocence which is unconnected to any other cognizable constitutional violation. This court has been cautioned that it is "particularly egregious" to enter a stay on second or subsequent habeas petitions unless "there are substantial grounds upon which relief can be granted." *Delo v. Blair,* —— U.S. ——, 113 S.Ct. 2922, 125 L.Ed.2d 751 (1993). We have been further directed to respect the finality that inheres in state court judgments of conviction, and to understand that the capacity of federal courts to improve upon state trials in evidentiary hearings held years afterwards is limited. *Herrera,* 506 U.S. at 397–406, 113 S.Ct. at 859–63. Last minute stays on the part of federal courts represent an interference with the orderly processes of justice which should be avoided in all but the most extraordinary circumstances.

Petitioner's claim fails to meet these standards. It reflects a formula for eleventh-hour relief that is increasingly common in capital cases. Petitioner has advanced affidavits which claim that the actual perpetrator of the murder has confessed to the respective affiants. For many reasons, *Herrera* requires that we regard these affidavits with considered skepticism. The credibility of the affiants has never been observed; the contentions of the affiants have never been tested by cross-examination. Moreover, the affidavits do not represent

eyewitness accounts of the offense, and they are produced a dozen years after the trial in a context that is suggestive of an intent to delay.

Thus, affidavits like this should "be treated with a fair degree of skepticism." *Id.* at 423, 113 S.Ct. at 871 (O'Connor, J., concurring). That is especially so here, however. The affidavits contend that Randy Bowman is the real killer of Kenneth Arnder. However, Arnder was murdered between July 20, 1978 (when he was last seen) and July 25, 1978 (when his body was found). The Sheriff of Surry County, North Carolina, has also submitted an affidavit indicating that Mr. Bowman, the alleged actual killer, was in jail during that entire period. The affidavit of Sheriff Watson declares that Bowman was in continuous custody in the Surry County jail from July 3, 1978 until August 16, 1978. Those dates more than encompass the conceivable dates of the Arnder murder. Petitioner's contention that Bowman was recommended for work release on July 13 fails to contradict the statement in the affidavit that Bowman was actually released on $500 bond on August 16.

In any event, this last minute attempt to replicate a state trial setting through affidavits and federal evidentiary hearings twelve years after the fact of conviction bears little relationship to the orderly and deliberate manner in which justice should proceed. In view of the foregoing, we reverse the judgment of the district court, reinstate the execution date set by the state, and direct that our mandate issue forthwith.

It is so ORDERED.